Filed 1/31/24  P. v. Collins CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LATICE COLLINS,<br><br>    Defendant and Appellant. | C097996<br><br>(Super. Ct. No. 10F07391) |

Defendant Latice Collins appeals the trial court's denial of his resentencing petition under Penal Code[1] section 1172.6[2] after an evidentiary hearing.  Defendant

---

[1]    All undesignated section references are to the Penal Code.

[2]    Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  Defendant filed his petition under former section 1170.95, but we will refer to the current section 1172.6 throughout this opinion.

1

argues there was insufficient evidence to support the trial court's order. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Nathaniel Carter were charged with the robbery and murder of Steven C. Before trial, defendant pled guilty to first degree murder and received a sentence of 26 years to life with the possibility of parole. Defendant later petitioned for resentencing under section 1172.6. Following defendant's first evidentiary hearing, the trial court denied the petition. (*People v. Collins* (Jan. 6, 2022, C093514) [nonpub. opn.].) We reversed the denial because the trial court applied the wrong standard of review. (*Ibid*.) At defendant's second evidentiary hearing, the order that is the subject of this appeal, the prosecution introduced transcripts from Carter's trial and transcripts from defendant's first evidentiary hearing. Defendant called S.C., one of the witnesses from Carter's trial, to testify on his behalf. The following facts were revealed by the evidence admitted at defendant's second evidentiary hearing.

Steven was a cannabis dealer in Sacramento. About three months before his murder, Steven befriended Danisha H. Danisha and her friend Kayla T. would often obtain cannabis from Steven.

On the night of October 29, 2010, Kayla and Danisha decided they wanted cannabis. Danisha called Steven and made plans to meet him at a grocery store parking lot. Kayla and Danisha ran into defendant, defendant's girlfriend Dejohng Taylor, and Carter, who were getting out of Taylor's car. According to Kayla, Carter and defendant were excited and taking bandanas off their faces. Based on their conversation, both Danisha and Kayla believed Carter and defendant had just committed or were planning to commit a robbery. Defendant and Carter approached and asked Danisha if she would help them rob Steven. Defendant encouraged her to help. Carter told Danisha and Kayla the plan, which included that Danisha would distract Steven and that Carter would then push Danisha out of the way to rob Steven.

2

Defendant, Carter, and Taylor then left in Taylor's car and drove to the grocery store parking lot where Danisha had agreed to meet Steven. Danisha decided not to help with the robbery, but instead went to the parking lot with Kayla to try to warn Steven. Kayla saw Steven's white truck parked in the lot and Taylor park her car right behind Steven's truck. Both Kayla and Danisha saw defendant and Carter approach Steven's truck. Defendant approached on the passenger side, while Carter approached on the driver's side of the truck. Danisha screamed Steven's name to warn him.

At this point S.C., who was driving down the street by the parking lot, saw Carter pull something out of his pocket as he approached Steven's driver's side window. S.C. and Kayla saw a struggle ensue. Kayla saw defendant with his arm inside Steven's truck. Steven's truck began to reverse, and Kayla and Danisha heard a gunshot or two.

Steven's truck crashed into Taylor's car, careened into the street, and crashed into a building across the street. Kayla saw defendant run away and Carter get back into the car with Taylor before driving away. After driving past the incident, S.C. turned around to see what had happened, but left when she saw officers crowding the scene. She later called the sheriff's department to give a statement.

Steven died from a gunshot wound. Steven also had a cut on the right side of his head that was consistent with a knife rather than a car accident. Small knives were found on the passenger side of the truck. Danisha testified defendant threatened her against cooperating with the investigation; Kayla testified that she also received threats but did not identify who threatened her.

There were some discrepancies between Danisha's testimony at Carter's trial and her testimony at defendant's first evidentiary hearing. At the first evidentiary hearing, Danisha remembered little of her prior statements, though she affirmed those prior statements were truthful. The prosecution used her prior testimony to refresh her recollection, but she still did not remember her statements independently from the transcripts.

3

Kayla recalled more of her prior testimony at defendant's first evidentiary hearing than Danisha. Some of her prior testimony, however, was inconsistent with her testimony at defendant's first evidentiary hearing. At Carter's trial, Kayla testified she saw Carter with the gun he used to kill Steven before the night of the murder; at the evidentiary hearing she could not remember seeing Carter with the gun before the night of the murder. She also testified at Carter's trial that she saw defendant wielding a gun during the robbery. At the evidentiary hearing, however, Kayla could not recall ever seeing defendant with a gun. After reviewing her previous testimony Kayla recalled seeing defendant with a gun. Kayla also affirmed her previous testimony at Carter's trial was accurate.

Defendant testified at his first evidentiary hearing. He was confronted with a text message he sent to Taylor the day before the murder where he said that he needed money, "unless that lick we got planned goes right." He testified that a "lick" could mean a robbery but that is not what he meant when he sent the text message. Defendant provided no alternative explanation for what he meant in the text message.

Defendant also testified that on the day of the murder he visited Taylor. He said that he had never committed a robbery before that day and did not own a gun. Defendant said he and Taylor picked up Carter in Taylor's car. In the car, defendant and Carter discussed stealing cannabis from someone because they did not have the money to buy cannabis. Defendant said it was Carter's idea to steal cannabis. Defendant explained that they did not plan to steal specifically from Steven until they met Danisha and Kayla, who told the two men where to find Steven. Defendant said there was no plan to rob Steven beyond going to the parking lot, taking the cannabis, and running away. Defendant did not believe Steven would resist but was prepared to take the cannabis against Steven's will. Defendant said there was no plan to use fear or force to make Steven give them the cannabis.

Defendant testified that Carter directed them to the parking lot and told them where to park. Carter got out of the car and approached the driver's side window. Defendant testified that he yelled "[w]hat the fuck are you doing?" at Carter when Carter approached the truck while Danisha and Kayla were still across the street. Defendant said that he still got out of Taylor's car and approached Steven's passenger side window. Defendant said he could not put his hand into the truck because the window was closed. Defendant further claimed he did not know that Carter had a gun until Carter pointed the gun at Steven. Defendant testified that when Carter reached Steven's window, he demanded everything Steven had and shot immediately in one motion. Defendant said he took off running immediately after the gunshot because he was shocked.

Defendant acknowledged that armed robbery is a dangerous activity that could result in someone dying. Defendant testified that when he ran away from the scene, he thought Carter had shot Steven. Defendant stated that as he fled the scene he was not concerned with Steven's life. He also admitted to lying to the police afterwards because he was afraid of going to prison for robbery. He denied threatening any witnesses over their cooperation with the investigation into Steven's murder.

The trial court found that defendant's testimony was an attempt to minimize his role in planning and participating in the crime. The court found that the text message containing the term "lick" was an example of defendant's lack of credibility, especially given Kayla's testimony that defendant appeared to have committed a robbery before hatching the plan to rob Steven. The trial court credited the stories of Kayla and S.C. that an extended altercation occurred, rather than defendant's story that Carter demanded Steven's money and shot Steven all in the same motion. The court found that the cut and bruises on Steven's body also supported S.C.'s and Kayla's versions of events. The trial court found that defendant was a major participant in the crime and that he acted with reckless indifference to human life. Accordingly, the trial court denied defendant's petition for resentencing.

Defendant appeals.

## DISCUSSION

To convict defendant of felony murder the trial court was required to find beyond a reasonable doubt that defendant was a major participant in the robbery and that he acted with reckless indifference to human life. (*People v. Banks* (2015) 61 Cal.4th 788, 800-801.) Defendant argues the evidence was insufficient to support these findings.

We review for substantial evidence. (*People v. Njoku* (2023) 95 Cal.App.5th 27, 41-43.) Thus, we consider the entire record in a light favorable to the judgment to determine "whether the evidence is such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 932; see *People v. Clements* (2022) 75 Cal.App.5th 276, 298.) We reassess neither the evidence nor the credibility of witnesses. (*People v. Jennings* (2010) 50 Cal.4th 616, 638.) If the record reasonably justifies the trial court's findings, we must affirm the conviction. (*Id.* at p. 639.)

## I

### *Defendant Was A Major Participant*

To determine whether a defendant was a major participant in a robbery, a court considers the following factors: (1) The defendant's role in planning the crime that led to the death; (2) the defendant's use, knowledge, or production of the weapons used in that crime; (3) the defendant's awareness of the dangerousness of the crime or of the violent tendencies of his, her, or their accomplice; (4) the defendant's presence at the scene of the killing, role in the death, and opportunity to prevent it; and (5) the defendant's actions after lethal force was used. (*People v. Banks*, *supra*, 61 Cal.4th at p. 803.) Defendant argues the evidence was insufficient to show that he was a major participant in the robbery. We disagree.

The evidence revealed that defendant and Carter planned to rob Steven for his cannabis. The day before the robbery, defendant texted Taylor, who drove defendant and

6

Carter to the scene of the robbery, about a "lick" he had planned. Defendant acknowledged that lick could refer to a robbery and did not offer an alternative explanation for this text message. Kayla and Danisha also testified that defendant and Carter appeared to have just planned or completed a robbery before urging them to assist in the robbery of Steven. It is undisputed that defendant was present at the scene of the robbery. Kayla testified at defendant's first evidentiary hearing that she saw defendant with a gun and at Carter's trial that she saw defendant struggling with Steven before he was killed. Finally, defendant fled the scene of the shooting without thought to Steven's well-being in the moments after he was shot. Given defendant's prior planning activity, possession of a gun during the crime, attack of the victim before Carter shot him, and flight after the shooting, there was substantial evidence to support a finding that defendant was a major participant in the robbery that led to Steven's death.

Defendant disagrees. He argues that he was not a major participant because he was not instrumental in planning the robbery and the robbery was quick, impulsive, and unsophisticated. The evidence, however, revealed that defendant and Carter discussed stealing cannabis before they met Danisha and Kayla, and that defendant had been planning a robbery for at least one day prior to committing one against Steven. Further, defendant urged Danisha and Kayla to participate in the robbery, and then during the robbery, took an active role in taking the cannabis and attacking Steven. Thus, there was evidence in the record showing that defendant planned the robbery and his participation was more than peripheral.

Defendant argues that Carter unilaterally deviated from the "snatch and grab" plan by demanding everything Steven had, while defendant questioned his actions, and that this conduct shows defendant did not plan the criminal enterprise that led to Steven's death. The trial court, however, did not credit defendant's testimony. The trial court found that defendant's testimony was not credible given his attempts to minimize his involvement in the robbery. Further, the trial court noted that the autopsy supported the

testimony of S.C. and Kayla, that a struggle occurred before Carter shot Steven. The evidence suggested defendant participated in this struggle because of the cut on the right side of Steven's face—the side of his face that faced the passenger side of his truck, where defendant stood. Thus, the trial court's finding that defendant's testimony regarding his participation in the robbery was not credible was supported by substantial evidence.

Defendant contends there was insufficient evidence that he was in a position to stop the shooting or that he played any role in Steven's death. He also argues that the record clearly indicates he could not have aided Steven because Steven drove away after he was shot. The trial court, however, found that the evidence of a cut and bruises on Steven's body supported an inference that defendant assaulted Steven before his death. Thus, instead of acting to prevent Steven's death, defendant participated in the concerted attack against Steven. Further, Steven crashed into a building across the street from the parking lot where the robbery occurred. The fact that Steven drove away from the parking lot is not significant as defendant would make it because defendant could have simply crossed the street to aid Steven. Instead, defendant fled the scene. There was substantial evidence that defendant was in a position to stop the shooting or render aid to Steven and that his acts played a role in Steven's death.

Defendant argues the evidence was insufficient to show he acted with intent to kill or that he knew of Carter's violent tendencies. We agree there was no evidence presented showing defendant acted with an intent to kill or that defendant was aware of Carter's violent tendencies. Defendant's intent and knowledge, however, are just two factors for the trial court to consider. Considering the totality of the circumstances, there was substantial evidence for the trial court to find that defendant was a major participant in the robbery.

## II

### *Defendant Acted With Reckless Indifference*

To determine whether a defendant acted with reckless indifference to human life, the trial court considers the following factors: (1) The defendant's knowledge that weapons would be used; (2) the defendant's presence at the scene and ability to prevent the death or help the victim; (3) whether the defendant restrained the victim for a prolonged period; and (4) the defendant's knowledge of his, her, or their accomplice's violent tendencies. (*People v. Clark* (2016) 63 Cal.4th 522, 618-623.) Defendant argues there was insufficient evidence to show that he acted with reckless indifference to human life. We disagree.

The evidence revealed that defendant and Carter planned to rob Steven. There was also evidence that defendant was armed with a gun and that defendant cut Steven with a knife before he was shot. It is undisputed that defendant fled the scene as soon as he heard Carter fire the shot and did not attempt to aid Steven. Further, there was evidence that defendant lied to police regarding his involvement in the robbery and that he threatened Danisha against cooperating with the investigation. Given defendant's involvement in the plan, his possession of a gun, his coordinated attack on Steven and flight, and his subsequent threats to witnesses, there was sufficient evidence for the trial court to find that defendant acted with reckless indifference to human life.

Defendant disagrees, contending that his possession of a gun at the scene of the crime does not show he had the expectation of killing Steven. While an expectation to kill would likely demonstrate reckless indifference to human life, such an expectation is not a required finding. Rather, the relevant factor is whether defendant possessed weapons or knew his codefendant possessed weapons. (*People v. Clark*, *supra*, 63 Cal.4th at pp. 618-619.) Here, there was sufficient evidence to find defendant possessed a weapon.

Defendant also argues that he could not have prevented Steven's death because Carter suddenly deviated from the plan, which did not include killing Steven. The evidence, however, did not suggest that defendant tried to stop Carter when he approached Steven's truck before Danisha joined them to assist in the robbery as planned. Contrary to defendant's contention that he was powerless, S.C. and Kayla both saw defendant approach Steven's truck with Carter before Danisha arrived. Both witnesses said there was a struggle; during that struggle, defendant did not attempt to stop Carter. Thus, there was sufficient evidence to find defendant had the opportunity to stop Carter or repudiate Carter's actions, and that defendant did neither.

Defendant suggests that his flight may be interpreted as a repudiation of Carter's act of shooting Steven. Defendant further argues that aiding Steven was impossible because Steven drove away and that police arrived quickly on the scene. We are not persuaded. Defendant fled before police arrived on the scene, so the arrival of police says nothing of defendant's mental state when he fled. More importantly, defendant testified that he was only concerned with his own life when he fled. Thus, the evidence supports the trial court's implied finding that defendant was in a position to help Steven and failed to do so.

Defendant also suggests, citing *In re Taylor* (2019) 34 Cal.App.5th 543, 559, that there must be proof that he could have saved Steven's life had he stayed on the scene. We disagree. *Taylor* does not stand for the proposition that reckless indifference requires the defendant to be in a position to save the victim's life but fail to do so. (*Id*. at p. 559.) Instead, the *Taylor* court weighed the defendant's conduct with the other factors and determined it was not so egregious as to justify a reckless indifference finding. (*Ibid*.) Further, the defendant in *Taylor* was a getaway driver who did not directly participate in the robbery. (*Ibid*.) Because of the defendant's role as a getaway driver the evidence did not suggest he knew the seriousness of the victim's injuries. (*Ibid*.) This is not the case here. Defendant testified that he knew Carter had shot Steven and that he only cared

about his own life when he fled.  For these reasons, defendant's acts are evidence of his reckless indifference to human life.

Finally, defendant argues that the duration of the robbery and his lack of knowledge of Carter's violent tendencies prove he did not act with reckless indifference to human life.  We agree that the robbery was of short duration and there was no evidence that defendant knew of Carter's violent tendencies.  Again, these are just two factors for the trial court to consider.  Given the totality of the circumstances, there was sufficient evidence to find defendant acted with reckless indifference to human life.

DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
KRAUSE, J.

/s/
WISEMAN, J.*

---

*        Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.